Heidi McIntosh (*pro hac vice* pending)
Daniel Cordalis (*pro hac vice* pending)
Earthjustice
633 17th Street, Suite 1600
Denver, CO  80202
Utah Bar No. 6277
Colorado Bar No. 45933
hmcintosh@earthjustice.org
dcordalis@earthjustice.org
Phone: (303) 623-9466
Fax: (303) 623-8083

*Attorneys for Proposed Defendant-*
*Intervenors Center for Biological*
*Diversity and Defenders of Wildlife*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL, | ) No.  4:16-cv-00094-TUC-JGZ |
| Plaintiff, | ) |
| | ) **MEMORANDUM IN SUPPORT** |
| vs. | ) **OF MOTION OF CENTER FOR** |
| | ) **BIOLOGICAL DIVERSITY AND** |
| SALLY M.R. JEWELL, *et al.*, | ) **DEFENDERS OF WILDLIFE TO** |
| | ) **INTERVENE AS PARTY** |
| Defendants. | ) **DEFENDANTS** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 3

I.      THE CHALLENGED 10(j) RULE ....................................................................... 5

II.     THE CENTER'S AND DEFENDER'S ADVOCACY ON BEHALF OF THE
        MEXICAN GRAY WOLF........................................................................................ 7

ARGUMENT ...................................................................................................................... 10

I.      THE CENTER IS ENTITLED TO INTERVENE AS OF RIGHT ...................... 10

        A.      The Center's Motion to Intervene Is Timely................................................. 11

        B.      The Center Has Significant Protectable Interests in the Subject of this
                Action ........................................................................................................... 12

        C.      This Lawsuit Threatens the Center's Interests in Protecting the Mexican
                Gray Wolf...................................................................................................... 14

        D.      The Federal Defendants May Not Adequately Represent the Center's
                Interests ........................................................................................................ 15

II.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE
        INTERVENTION UNDER RULE 24(b) ............................................................. 17

CONCLUSION ................................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

Arakaki v. Cayetano,
  324 F.3d 1078 (9th Cir. 2003) ...................................................................16

Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.,
  309 F.3d 1113 (9th Cir.2002) ....................................................................11

Cal. ex rel. Lockyer v. United States,
  450 F.3d 436 (9th Cir. 2006) .....................................................................14

Center for Biological Diversity v. Salazar,
  1:12-cv-01920 (D.D.C. 2012) ......................................................................5

Citizens for Balanced Use v. Mont. Wilderness Ass'n,
  647 F.3d 893 (9th Cir. 2011) .....................................................................16

Coalition of Ariz./N.M. Ctys for Stable Econ. Growth v. Dep't of Interior,
  100 F.3d 837 (10th Cir. 1996) ...............................................................12–13

Cty. of Fresno v. Andrus,
  622 F.2d 436 (9th Cir. 1980) .....................................................................12

Defenders of Wildlife v. Jewell,
  No. 4:14-CV-2472-JGZ (D. Ariz.) ................................................................7

Forest Conservation Council v. U.S. Forest Serv.,
  66 F.3d 1489 (9th Cir. 1995) ..........................................................14, 16, 17

Greene v. United States,
  996 F.2d 973 (9th Cir. 1993) .....................................................................12

Idaho Farm Bureau Fed'n v. Babbitt,
  58 F.3d 1392 (9th Cir. 1995) ..........................................................11, 14–15, 16

Kootenai Tribe of Idaho v. Veneman,
  313 F.3d 1094 (9th Cir. 2002) ...................................................................17

Natural Res. Def. Council, Inc. v. U.S. Nuclear Reg. Comm'n,
  578 F.2d 1341 (10th Cir. 1978) .................................................................14

Nw. Forest Res. Council v. Glickman,
  82 F.3d 825 (9th Cir. 1996) .....................................................................12

ii

Prete v. Bradbury,
    438 F.3d 949 (9th Cir. 2006) ...................................................................................16

Sagebrush Rebellion, Inc. v. Watt,
    713 F.2d 525 (9th Cir. 1983) .................................................................12, 14, 15

Sierra Club v. EPA,
    995 F.2d 1478 (9th Cir. 1993) ...........................................................................11, 12

Trbovich v. United Mine Workers of Am.,
    404 U.S. 528 (1972) ...............................................................................................16

United States v. Alisal Water Corp.,
    370 F.3d 915 (9th Cir. 2004) ...............................................................................11

United States v. City of Los Angeles,
    288 F.3d 391 (9th Cir. 2002) ...............................................................................11

Venegas v. Mitchell,
    495 U.S. 82 (1990) ...............................................................................................17

Venegas v. Skaggs,
    867 F.2d 527 (9th Cir. 1989) ...............................................................................17

Wilderness Soc'y v. U.S. Forest Serv.,
    630 F.3d 1173 (9th Cir. 2011) ..............................................................11, 12, 14, 17

**Statutes**

16 U.S.C. §§ 1531–1544.............................................................................................3

16 U.S.C. § 1531(b)....................................................................................................3

16 U.S.C. § 1532(3)....................................................................................................3

42 U.S.C. §§ 4321–4370m-12. ..................................................................................5

**Other Authorities**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1904 (3d ed. 2007) ........................................................................17

63 Fed. Reg. 1752 (Jan. 12, 1998) ..................................................................5

78 Fed. Reg. 35,719 (June 13, 2013) ...............................................................5

79 Fed. Reg. 43,358 (July 25, 2014) ...............................................................5

80 Fed. Reg. 2512 (Jan. 16, 2015) ...............................................................1, 6

Fed. R. Civ. P. 24(a)(2) ..........................................................................10, 14

Fed. R. Civ. P. 24(b) ...............................................................................17

## <u>INTRODUCTION</u>

The Center for Biological Diversity and Defenders of Wildlife (collectively, "the Center," unless referenced individually by name), hereby submit their motion to intervene as of right as a party defendant pursuant to Rule 24(a) of the Federal Rules of Civil Procedure in <u>Safari Club International v. Jewell</u> (<u>Safari Club</u>), No. CV-16-00094-TUC-JGZ (D. Ariz.).  In the alternative, the Center moves to intervene in this case permissively pursuant to Rule 24(b).

The Safari Club originally filed this case in the District of New Mexico on October 16, 2015 to challenge the U.S. Fish and Wildlife Service's ("FWS") January 16, 2015 rule[1] [hereinafter "Revised 10(j) Rule"] governing the management of the endangered Mexican gray wolf.  Pet. Review, <u>Safari Club Int'l v. Jewell</u> (<u>Safari Club N.M.</u>), No. 1:15-cv-00930-JCH-LH (D.N.M. Oct. 16, 2015), Dkt. No. 1.  When the Safari Club filed its suit, three consolidated cases that also challenged the FWS's Revised 10(j) Rule were already pending in this Court:  1) <u>Center for Biological Diversity v. Jewell</u> (<u>Center</u>), No. CV-15-00019-TUC-JGZ (lead case); 2) <u>Coalition of Arizona and New Mexico Counties for Economic Growth v. U.S. Fish & Wildlife Service</u> (<u>Coalition</u>), No. CV-15-00179-TUC-JGZ; and 3) <u>WildEarth Guardians v. Ashe</u>, No. CV-15-00285-TUC-JGZ.On December 4, 2015 the Federal Defendants filed their motion to transfer <u>Safari Club</u> to the District of Arizona so that all challenges to the Revised 10(j) Rule could be

---

[1] <u>See generally</u> Revision to the Regulations for the Nonessential Experimental Population of the Mexican Wolf, 80 Fed. Reg. 2512 (Jan. 16, 2015) (to be codified at 50 C.F.R. § 17.84(k)).

resolved together in the same court.  Defs. Mot. Transfer, <u>Safari Club N.M.</u>, No. 1:15-cv-00930-JCH-LH (D.N.M. Dec. 4, 2015), Dkt. No. 16.  The District of New Mexico granted the transfer motion on February 11, 2016.  Memorandum Opinion and Order, <u>Safari Club N.M.</u>, No. 1:15-cv-00930-JCH-LF (D.N.M. Feb. 11, 2016), Dkt. No. 26.  However, on March 11, 2016 this Court denied the Federal Defendants' motion to consolidate <u>Safari Club</u> with the three earlier-filed cases, largely because the consolidated cases had already proceeded to a relatively advanced stage of the litigation, therefore minimizing the potential for the increased efficiency offered by consolidation.  Order, <u>Center</u>, No. CV-15-00019-TUC-JGZ (D. Ariz. March 11, 2016), Dkt. No. 120.  Briefing in <u>Safari Club</u> will, accordingly, take place according to its own scheduling order.[2]

As discussed below, the Center meets the requirements of Rule 24 because, in part, both its case and <u>Safari Club</u> challenge the same Revised 10(j) Rule, but with sharply opposing objectives.  While Safari Club seeks to eliminate the modest protection for Mexican wolves afforded by certain provisions of the Revised 10(j) Rule, the Center seeks to vacate only the problematic provisions of the Revised 10(j) Rule while preserving the remainder.  While the Center's goal is ultimately to ensure the wolves' survival and recovery as required by the Endangered Species Act ("ESA"), a judgment in

---

[2] The Court's scheduling order calls for merits briefing to being mid-July, with the Federal Defendants' response due late August.  Order, April 15, 2016, Dkt. No. 43.  If the Court grants this motion to intervene, the Center will not seek to alter the dates specified in the Order absent extenuating circumstances, but requests that, as in the consolidated cases, the due date for it merits brief be one week after the due date for the Federal Defendants' brief.

Safari Club's favor would frustrate that goal and thereby harm the Center's interest. In addition, the Federal Defendants, whom the Center has sued in its own case, do not adequately represent the Center's interests in Safari Club. For similar reasons, the Court has already granted the Center's motion to intervene in Coalition. Order, Center, No. CV-15-00019-TUC-JGZ (D. Ariz. Aug. 18, 2015), Dkt. No. 74. It should do so in this case as well.

In the alternative, the Center meets the Rule 24(b) standard for permissive intervention because it has a claim or defense that shares common questions of law and fact with those raised in the Safari Club's case.

Counsel for the Center has contacted the other parties in this case to determine their positions on this motion. The Safari Club indicated it will determine its position after reviewing this motion and memorandum in support. The Federal Defendants do not oppose the motion.

## STATEMENT OF FACTS

This case involves the plight of one of the most endangered mammals in North America, the Mexican gray wolf (Canis lupus baileyi), which has been listed as endangered under the Endangered Species Act, 16 U.S.C. §§ 1531–1544, since 1976. Despite the ESA's requirement that the FWS ensure the recovery of listed species like the wolves, see id. §§ 1531(b), 1532(3), and the passage of over four decades, the FWS's recovery efforts have proven inadequate. The Mexican gray wolf continues to struggle for survival in the wild, with dangerously depressed levels of genetic diversity, a

limited territory in which to roam, and overly-permissive rules that allow for the killing or harassment of wolves.

Here, the Safari Club asks the Court to invalidate the entire Revised 10(j) Rule and associated environmental impact statement and record of decision, and to enjoin the Revised 10(j) Rule's implementation.  See Am. Pet. Review ¶¶ 19, 134, 172, 180, 186, Safari Club N.M., No. 1:15-cv-00930-JCH-LF (D.N.M. Jan. 4, 2016), Dkt. No. 21. Among other things, the Safari Club argues that the Revised 10(j) Rule is illegal because the hunting community and state of New Mexico had not agreed to its terms and because the FWS had rejected the Safari Club's insistence on a "poison pill" provision that would automatically allow the states to kill all Mexican wolves in the wild if their ESA status changed.  Id. ¶¶ 1, 101, 116–117, 122, 127.  The Safari Club's allegations and the relief it seeks are antithetical to the Center's desired outcome—recovery of the Mexican wolf population.

By contrast, the Center's complaint asks this Court to vacate and remand only certain challenged portions of the Revised 10(j) Rule that would negatively impact Mexican wolf recovery while leaving the remainder of the Revised 10(j) Rule in effect. See Am. Compl. ¶¶ 111, 115, 119–20, 124, 128–31, 136, 140, Center, No. CV-15-00019-TUC-JGZ (D. Ariz. Mar. 23, 2015), Dkt. No. 19.  If the Safari Club prevails in this case, the progress towards bringing the wolves back from the brink of extinction that the Center has long worked to achieve will be undermined as threats to the wolves increase and conservation measures are hobbled.

I.      **THE CHALLENGED 10(j) RULE**

In 1998, the FWS reintroduced Mexican gray wolves from a captive breeding program into the wild in the Blue Range Wolf Recovery Area ("BRWRA"), encompassing contiguous portions of eastern Arizona and western New Mexico, and promulgated a rule to govern their management.  See Establishment of a Nonessential Experimental Population of the Mexican Gray Wolf in Arizona and New Mexico, 63 Fed. Reg. 1752 (Jan. 12, 1998).  The Center was actively engaged in the development of the 1998 10(j) rule, provided detailed comments on the rule, and engaged in ongoing discussions with the FWS in an effort to improve the rule.  Robinson Decl. ¶¶ 3–4 (attached hereto as Ex. 1); Sargent Decl. ¶ 4 (attached hereto as Ex. 2).  Unfortunately, the 1998 10(j) rule proved ineffective as a recovery tool; in fact, FWS's interim reviews of wolf management all called for significant reforms.

After the inadequacy of the 1998 rule became apparent, the Center for Biological Diversity filed a petition and two lawsuits challenging the FWS's failure to recover the wolves.  Robinson Decl. ¶ 3.[3]  In response to the Center's actions, in 2012 the FWS began to revise the 1998 10(j) rule in 2012, and a year later issued a proposed revision to the rule.  Proposed Revision to the Nonessential Experimental Population of the Mexican Wolf, 78 Fed. Reg. 35,719 (June 13, 2013).  On July 25, 2014, the FWS released for public review and comment a Draft Environmental Impact Statement ("DEIS") for the

---

[3] The Center's complaint in Center for Biological Diversity v. Salazar, 1:12-cv-01920 (D.D.C. Nov. 28, 2012), is available at http://www.biologicaldiversity.org/species/mammals/Mexican_gray_wolf/pdfs/Complaint_Mexican_Wolf_11-28-2012.pdf.

proposed rule pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370m-12.  Proposed Revision to the Nonessential Experimental Population of the Mexican Wolf, 79 Fed. Reg. 43,358 (July 25, 2014).

Both the Center for Biological Diversity and Defenders of Wildlife provided detailed comments on the proposed rule revision and the DEIS, disseminated information to the public and their members about the rulemaking, and urged them to submit comments as well.  Sargent Decl. at ¶ 4; Robinson Decl. ¶¶ 4–6, P. Ossorio Decl. ¶ 15 (attached hereto as Ex. 3).  Following the public review and comment period on the DEIS, the FWS published the Revised 10(j) Rule on January 16, 2015.  80 Fed. Reg. at 2512.[4]  The Revised 10(j) Rule incorporated terms that FWS had rejected in the DEIS as inimical to the wolves' recovery, but which it included anyway at the behest of the state of Arizona.  See Am. Compl. ¶¶ 82, 84, Center, No. CV-15-00019-TUC-JGZ Dkt. No. 19; see also; Ariz. Mot. Intervene 5–6, Center, No. CV-15-00019-TUC-JGZ (D. Ariz. Apr. 15, 2015), Dkt. No. 22 (acknowledging that FWS changed the proposed 10(j) rule in response to AZGFD's efforts).  As a result, the Revised 10(j) Rule includes provisions that are not supported by the best available science, conflict with expert recommendations, and ultimately are harmful to wolf survival and recovery.  Those provisions include, among other things; a cap on the wolf population in Arizona and New Mexico at a total of 300 to 325 wolves; a failure to authorize release of sufficient captive

---

[4] At the same time, the FWS decided to issue a separate permit under ESA section 10(a)(1)(A) authorizing the "take," including killing or removal, of Mexican gray wolves under conditions described in the Revised 10(j) Rule.  80 Fed. Reg. at 2512.

wolves to remedy the wild population's impaired genetic diversity; removal of wolves from outside a designated Mexican Wolf Experimental Population Area ("MWEPA"); and exclusion of wolves from needed recovery habitat north of Interstate 40.  Am. Compl. ¶ 87(a)–(f), <u>Center</u>, No. CV-15-00019-TUC-JGZ, Dkt. No. 19 (listing deficiencies in the Revised 10(j) Rule).[5]

While these features of the Revised 10(j) Rule threaten the wolves' survival and recovery, certain other provisions have conservation value; accordingly, the Center did not request the Court to vacate the Revised 10(j) Rule in its entirety.  For example, provisions that allow the wolves to roam beyond the limited BRWRA and into the larger MWEPA offer an incremental benefit to Mexican gray wolf conservation—albeit one that is ultimately overwhelmed by other rule provisions that the Center challenges. Nevertheless, such provisions offering modest incremental benefits are, in the Center's view, the sole positive aspects of the Revised 10(j) Rule.

## II. <u>THE CENTER'S AND DEFENDER'S ADVOCACY ON BEHALF OF THE MEXICAN GRAY WOLF</u>

The Center for Biological Diversity has been actively involved in wolf conservation since its inception as an organization.  Robinson Decl. ¶ 3.  It submitted comments on the proposed 1998 10(j) rule, <u>id.</u> ¶ 4, and participated in every subsequent decision-making process related to the wolves' recovery and conservation, including (but

---

[5] The Center, together with other wolf conservation groups has also challenged the FWS's failure to complete a mandated recovery plan for the Mexican gray wolf in a related case, <u>Defenders of Wildlife v. Jewell</u>, No. 4:14-CV-2472-JGZ (D. Ariz.).

not limited to) submitting written comments to governmental agencies;[6] testifying at public hearings; participating in meetings of the Mexican Wolf Adaptive Management Working Group and the Southwest gray wolf distinct population segment recovery team; filing a petition that led to the Revised 10(j) Rule; undertaking informal discussions with government officials and filing a petition to re-list the Mexican gray wolf as a subspecies or distinct population segment.  Id. ¶ 4.[7]

The Center for Biological Diversity has also disseminated information about wolves to educate and inspire the public to become involved in the wolves' recovery.  It conducted at least 170 slide show presentations, set up information tables in public places, discussed the issue with numerous members of the public, wrote dozens of opinion pieces and articles for newspapers, and contributed to hundreds of news articles and broadcasts on the wolves by providing information to reporters.[8]  It maintains a website page with information on the wolves and opportunities for public involvement.[9]

---

[6] The Center's comment letters are available at
http://www.biologicaldiversity.org/species/mammals/Mexican_gray_wolf/index.html.

[7]  The petition is available at
http://www.biologicaldiversity.org/species/mammals/Mexican_gray_wolf/pdfs/APApetition_2004.pdf.

[8] Select news stories are available at
http://www.biologicaldiversity.org/species/mammals/Mexican_gray_wolf/media_highlights.html.

[9] Ctr. for Biological Diversity, Mexican Gray Wolf,
http://www.biologicaldiversity.org/species/mammals/Mexican_gray_wolf/index.html
(last visited April 15, 2016).

Likewise, Defenders of Wildlife has engaged in extensive work to ensure the

conservation of the Mexican gray wolf and its recovery in the wild.  It has participated in

public education efforts, discussed the conservation needs of the wolves on numerous

occasions with state and federal officials, including the FWS, and drafted comment

letters.  Sargent Decl. ¶ 4; see also P. Ossorio Decl. ¶¶ 14–15.  Defenders of Wildlife also

maintains a website with a public information page dedicated to the conservation of

Mexican gray wolves,[10] and publishes a magazine, which it utilizes as a public

information tool to disseminate news and information about the plight of the Mexican

gray wolf.[11]

The advocacy work of both the Center for Biological Diversity and Defenders of

Wildlife is fueled by an intense personal commitment and passion for the conservation

and survival of the Mexican gray wolves in the wild.  The groups' members have a

powerful aesthetic interest in the wolves and their native habitat and frequently visit areas

where the wolves exist in the wild in the hopes of seeing or hearing them.  Robinson

Decl. ¶¶ 8–10; Sargent Decl. ¶¶ 5–6; Crumbo Decl. ¶¶ 5–9 (attached hereto as Ex. 4);

---

[10] Defs. of Wildlife, Wolves in the Southwest, http://www.defenders.org/places-for-wolves/southwest (last visited April 15, 2016).

[11] See, e.g., Defs of Wildlife, Mexican Gray Wolves by the Numbers, http://www.defenders.org/magazine/spring-2014/mexican-%E2%80%A8gray-wolves-numbers (last visited April 15, 2016).

P. Ossorio Decl. ¶¶ 2–13; J. Ossorio Decl. ¶¶ 2–7 (attached hereto as Ex. 5).[12]

Encounters with wolves or signs of their presence in the wild offer a thrilling experience for the groups' members, who describe such moments as "magical" and as greatly enhancing their experience in the outdoors.  J. Ossorio Decl. ¶¶ 5, 7; P. Ossorio Decl. ¶¶ 4, 7–12 (describing one experience as "unforgettable, magical"); Crumbo Decl. ¶¶ 5, 7; Sargent Decl. ¶¶ 5–6; Robinson Decl. ¶¶ 8–10.

Reversal of the Revised 10(j) Rule in its entirety, which the Safari Club seeks in this case, would harm the Center's interests by eliminating the only features of the Revised 10(j) Rule that actually represent incremental progress for Mexican gray wolf conservation.  For example, if the Safari Club prevails, the Revised 10(j) Rule's expansion of the wolves' dispersal area into the MWEPA would be revoked, and Mexican gray wolves would again be confined to the smaller and inadequate BRWRA. See Robinson Decl. ¶¶ 11–12; Sargent Decl. ¶¶ 7–8.

## ARGUMENT

### I.    The Center is Entitled To Intervene As of Right

Rule 24(a)(2) "requires a court, upon timely motion, to permit intervention of right by anyone" who satisfies the rule's four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action

---

[12] The attached declarations of Peter and Jean Ossorio and Kim Crumbo are duplicates of the declarations the Center filed in support of its motion to intervene in the Coalition case.  See Dkt. Nos. 72-5, 72-6 and 72-4, respectively, Center, No. CV-15-00019-TUC-JGZ (D. Ariz. July 31, 2015).  They are equally relevant to the instant motion.

may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

Wilderness Soc'y v. U.S. Forest Serv., 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (quoting Sierra Club v. EPA, 995 F.2d 1478, 1481 (9th Cir. 1993)).  The Ninth Circuit "construe[s] the Rule broadly in favor of proposed intervenors," recognizing that "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts."  Id. at 1179 (quoting United States v. City of Los Angeles, 288 F.3d 391, 397–98 (9th Cir. 2002)); accord Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995).  The Ninth Circuit recently noted its "consistent approval of intervention of right on the side of the federal defendant in cases asserting violations of environmental statutes."  Wilderness Soc'y, 630 F.3d at 1179.  As demonstrated below, the Center meets Rule 24(a)(2)'s four-part test.

## A.   **The Center's Motion to Intervene Is Timely.**

Timeliness is measured by examining "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  United States v. Alisal Water Corp., 370 F.3d 915, 921 (9th Cir. 2004) (quoting Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc., 309 F.3d 1113, 1119 (9th Cir.2002)).  Here, the Center has not delayed in moving to intervene, and the timing of its motion results in no prejudice to the parties.  The Court's April 15, 2016 order outlining the briefing schedule provides that merits briefing will not begin until July 15, 2016.  Order, Dkt. No. 43.

11

B.      **The Center Has Significant Protectable Interests in the Subject of this Action.**

"Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry." Greene v. United States, 996 F.2d 973, 976 (9th Cir. 1993). The requirement of a protectable interest is not a rigid, technical or onerous requirement, in that Rule 24(a)(2) "does not require a specific legal or equitable interest." Wilderness Soc'y, 630 F.3d at 1179. Rather, it is a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Id. (quoting Cty. of Fresno v. Andrus, 622 F.2d 436, 438 (9th Cir. 1980)). "[I]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." Id. (quoting Sierra Club, 955 F.2d at 1484). Specifically, "environmental, conservation and wildlife interests" in the subject matter of the pending litigation have long been held sufficient for intervention of right. E.g., Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 526–28 (9th Cir. 1983).

The Ninth Circuit has also held that conservation groups merit intervention of right where a plaintiff challenges a decision that the groups were closely involved in during the administrative process. See Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 837–38 (9th Cir. 1996) (observing that public interest groups have been allowed to intervene as of right when groups "were directly involved in the enactment of the law or in the administrative proceedings out of which the litigation arose"); see also Coal. of Ariz./ N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 841–42

12

(10th Cir. 1996) (granting intervention in suit challenging ESA protection and finding that conservationist had a protectable interest in endangered species he had worked to protect).

Here, the Center's advocacy was integral to the development of the Revised 10(j) Rule.  It participated and provided extensive comments during every stage of the rule revision, including providing comments on the proposed rule and on the preliminary, draft and final environmental impact statements.  Supra at 6, 8.  Indeed, it was only after the Center vigorously advocated for the new rule—including a petition and two lawsuits filed by the Center for Biological Diversity—that FWS even commenced formal rulemaking to revise the 1998 10(j) rule.  Supra at 5.  The Center's activism places it squarely within the case law granting intervention to conservationists seeking to defend measures involving endangered wildlife in the face of litigation challenges.

The Center and its members also have recreational, aesthetic and scientific interests in the recovery of the Mexican gray wolf.  Supra at 9–10.  The Center's members use public lands occupied by the wild Mexican wolf population, as well as lands elsewhere in the Southwest that contain suitable habitat for Mexican gray wolves, for a wide range of activities.  Id. at p. 10.  They have viewed or listened to Mexican gray wolves and found signs of wolf presence in Arizona and New Mexico and seek out and value these experiences.  Id.  Thus, the Center's interests fit squarely within the "interest" test for intervention as of right.

Because the Center has a deep interest in Mexican gray wolf conservation, in ensuring the effectiveness of those portions of the Revised 10(j) Rule which they long

13

sought, and in defending the Revised 10(j) Rule provisions that, in the Center's view, would further recovery of the wolves, it has met Rule 24(a)'s interest test.

### C.   This Lawsuit Threatens the Center's Interests in Protecting the Mexican Gray Wolf.

Rule 24(a) requires that an applicant for intervention of right be "so situated that disposing of the action <u>may</u> as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). "Rule [24] refers to impairment 'as a practical matter.' Thus, the court is not limited to consequences of a strictly legal nature." <u>Natural Res. Def. Council, Inc. v. U.S. Nuclear Reg. Comm'n</u>, 578 F.2d 1341, 1345 (10th Cir. 1978) (court "may consider any significant legal effect in the applicant's interest") (quoting Fed. R. Civ. P. 24(a)(2)) (quoted in <u>Forest Conservation Council v. U.S. Forest Serv.</u>, 66 F.3d 1489, 1498 (9th Cir. 1995), <u>abrogated on other grounds by</u> <u>Wilderness Soc'y</u>, 630 F.3d at 1173). Rather, "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" <u>Wilderness Soc'y</u>, 630 F.3d at 1179 (quoting <u>Cal. ex rel. Lockyer v. United States</u>, 450 F.3d 436, 441 (9th Cir. 2006)). The Ninth Circuit applies this test liberally in favor of intervention. <u>See, e.g.</u>, <u>Sagebrush Rebellion</u>, 713 F.2d at 527–28.

The Ninth Circuit has also long permitted conservation groups to intervene where, as here, the litigation at issue may result in harm to natural and other resource values that are important to the groups' missions and where the groups have worked to protect those values. <u>See, e.g.</u>, <u>Idaho Farm Bureau Fed'n</u>, 58 F.3d at 1398 (concluding impairment

14

prong of intervention test was satisfied when plaintiff's claim could impair conservation groups' ability to protect an interest in a threatened species for which they had advocated); <u>Sagebrush Rebellion</u>, 713 F.2d at 527–28 (holding that there "can be no serious dispute" regarding, <u>inter alia</u>, potential impairment of interest where lawsuit seeks to invalidate conservation area designation, and proposed intervenor conservation group has interests in protecting wildlife and habitat).

As explained above, the Center has a long-standing interest in the protection and conservation of the Mexican gray wolf and was instrumental in advocating for the promulgation of the Revised 10(j) Rule.  While the Revised 10(j) Rule is deeply flawed and the Center seeks to vacate and remand its unlawful provisions in a separate lawsuit, the Safari Club seeks to dismantle even the rule's limited beneficial provisions and set aside the rule in its entirety.  The result the Safari Club seeks would therefore eliminate the only features of the Revised 10(j) Rule that serve the Center's interest in a healthy wolf population.  Robinson Decl. ¶¶ 11–12; Sargent Decl. ¶¶ 7–8 (explaining the harm to the Center's interests if the Revised 10(j) Rule were vacated in its entirety).

Because the Center's interests are threatened by the Safari Club's litigation to vacate the Revised 10(j) Rule, the Center has demonstrated that this suit "may impair" its interests.

D.   **The Federal Defendants May Not Adequately Represent the Center's Interests.**

The fourth prong of Rule 24(a)(2) requires courts to consider "whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments;

15

whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect."  Forest Conservation Council, 66 F.3d at 1498–99.  Ultimately, "[t]he requirement of [Rule 24(a)(2)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."  Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972) (emphasis added).

Here, the FWS and the other named Federal Defendants do not adequately represent the Center's interests in recovery of the Mexican gray wolf.  While it is "presumed that [the government] adequately represents its citizens when the applicant shares the same interest," Prete v. Bradbury, 438 F.3d 949, 956 (9th Cir. 2006) (quoting Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003)), the Center and the FWS do not share the same interests.  To the contrary, the FWS promulgated the Revised 10(j) Rule only after being prodded into action by litigation previously brought by the Center. This fact alone demonstrates that the FWS cannot adequately represent the Center's interest.  See, e.g., Citizens for Balanced Use v. Mont. Wilderness Ass'n, 647 F.3d 893, 900 (9th Cir. 2011) (holding that where federal agency defendant issued challenged order "only reluctantly in response to successful litigation by Applicants[,] … this fact alone demonstrates that" agency representation of applicants' interest may be inadequate); Idaho Farm Bureau Fed'n, 58 F.3d at 1398 (finding federal agency would not adequately represent environmental group where challenged agency decision was compelled by that group's prior litigation).

16

Moreover, a federal agency "is required to represent a broader view than the more narrow, parochial interests" of the applicant organizations and their members.  Forest Conservation Council, 66 F.3d at 1499.  That is especially true here, where the Center is suing FWS over the same rule challenged in this case.  This existing litigation between the Center and the FWS starkly demonstrates that the FWS does not share the Center's perspective regarding Mexican gray wolf conservation, which is the subject matter at the heart of this case.  Because FWS cannot adequately represent the Center's interests, the fourth and final requirement for intervention as of right is satisfied.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(b).

In the alternative, the Court should grant the Center permissive intervention under Rule 24(b).  Rule 24(b) permits intervention where an applicant's claim or defense, in addition to being timely, possesses questions of law or fact in common with the existing action. Fed. R. Civ. P. 24(b)(1); see also Venegas v. Skaggs, 867 F.2d 527, 529–30 (9th Cir. 1989), aff'd sub nom. Venegas v. Mitchell, 495 U.S. 82 (1990).[13]  As shown above, this motion is timely.  Moreover, the Center intends to respond directly to Safari Club's broad challenge to the Revised 10(j) Rule.  See Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1110 (9th Cir. 2002) (applicants "satisfied the literal requirements of Rule 24(b)" where they "asserted defenses … directly responsive to the [plaintiffs'] claim[s]"), abrogated on other grounds by Wilderness Soc'y, 630 F.3d at 1173.  Accordingly, permissive intervention is also warranted.

---

[13]  Like intervention of right, permissive intervention is to be granted liberally.  See 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1904, at 269 (3d ed. 2007).

17

## CONCLUSION

For the foregoing reasons, this Court should grant the motion to intervene.

DATED this 22nd day of April, 2016.

s/Heidi McIntosh_____
Heidi McIntosh (Utah Bar No. 6277)
Daniel Cordalis (Colo. Bar No. 45933)
Earthjustice
633 17th Street, Suite 1600
Denver, CO  80202
hmcintosh@earthjustice.org
dcordalis@earthjustice.org
Fax: (303) 623-8083
Phone: (303) 623-9466

*Attorneys for Proposed Defendant-
Intervenors Center for Biological
Diversity and Defenders of Wildlife*

18

## CERTIFICATE OF SERVICE

I, hereby certify that on the 22nd day of April, 2016, I caused the foregoing **MEMORANDUM IN SUPPORT OF MOTION OF CENTER FOR BIOLOGICAL DIVERSITY, ET AL. TO INTERVENE AS DEFENDANTS** to be e-filed through the United States District Court CM/ECF electronic filing system and served on all counsel of record.

s/Heidi McIntosh_____
                    Heidi McIntosh